UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
Andrarex, Ltd.,

                            Plaintiff,

          v.                                              COMPLAINT

Republic of Argentina,

                            Defendant
------------------------------------------------------------x

14 CV 9093

RECEIVED
NOV 14 2014
U.S.D.C. S.D. N.Y.
CASHIERS

Andrarex, Ltd., by its attorneys, for their Complaint alleges as follows:

## I.   NATURE OF THE ACTION

1. This is a breach of contract action based on certain bonds issued by Argentina and beneficially owned by Andrarex Ltd. ("Andrarex's Bonds," as defined below). Andrarex's Bonds were all issued pursuant to a Fiscal Agency Agreement, dated October 19, 1994 (the "FAA") between Argentina and Bankers Trust Company, as Fiscal Agent. A true and correct copy of the FAA is annexed hereto as Exhibit A.

2. Andrarex seeks specific performance of Argentina's payment obligations pursuant to the Equal Treatment Provision contained in paragraph 1(c) of the FAA, which provides for equal treatment in terms of rank and priority of payment for holders of bonds issued pursuant to the FAA with respect to any unsecured and unsubordinated External Indebtedness, as defined in the FAA (the "Equal Treatment Provision").

3. Beginning in 2005 and continuing to the present day, Argentina has engaged in a course of conduct that violates the Equal Treatment Provision. Argentina held bond exchanges in 2005 and 2010 in connection with which it issued bonds (the "Exchange Bonds") with payment obligations that rank higher in order of payment than those issued under the FAA, including Andrarex's Bonds. These Exchange Bonds meet the definition of "External Indebtedness" in the FAA. Argentina's issuance of these higher ranking bonds, facilitated by Law 26,017 passed in

2005, and Law 26,547 passed in 2009, and its payment and attempted payment of interest to the holders of the Exchange Bonds as such interest becomes due—while paying nothing to Andrarex and other bondholders who had secured a judgment against Argentina in this Court but did not participate in the 2005 or 2010 exchanges ("judgment creditors")—violates the Equal Treatment Provision of the FAA.

4. Law 26,017 provides, among other things, that the "national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds held by Andrarex.

5. Law 26,547 provides, among other things, that the "Republic of Argentina . . . is forbidden to offer to the holders of public debt [including those issued pursuant to the FAA] that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding [to enforce their rights], treatment more favorable than the treatment afforded to holders who did not bring such proceedings."

6. In October 2010, holders of bonds also issued pursuant to the FAA sought specific performance of the Equal Treatment Provision in three pre-judgment cases.[1]

7. On February 23, 2012, this Court issued an injunction, to the benefit of the plaintiffs in the three pre-judgment cases, to remedy Argentina's continuing violations of the Equal Treatment Provision, which required Argentina to pay bondholders ratably on certain of bonds whenever it makes any payment to the holders of the Exchange Bonds. A true and correct copy of the Court's February 23, 2012 Order is annexed hereto as Exhibit B.

8. On October 26, 2012 the Second Circuit affirmed the Court's February 23, 2012 Order, but remanded the injunction for clarification. *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Oct. 26, 2012) (ECF No. 442).

---

[1] These cases are *NML Capital, Ltd v. The Republic of Argentina*, 08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708 (the "Pre-judgment Cases").

9. Although the Second Circuit's judgment was not final, Argentina petitioned for a writ of certiorari to the United States Supreme Court. The petition was denied on October 7, 2013. *Republic of Argentina v. NML Capital, Ltd.,* et al., No. 121494 (S. Ct. Oct. 7, 2013).

10. This Court amended the February 23, 2012 Order on November 21, 2012. A true and correct copy of the Court's November 21, 2012 Order (the "Amended February 23 Order") is annexed hereto as Exhibit C.

11. In response to the Orders of the Court and the affirmances of the Second Circuit Court of Appeals in the three pre-judgment cases, Argentine officials, including President Kirchner, have repeatedly stated that Argentina has no intention of ever paying bondholders that had secured judgments against Argentina in front of this Court, including Andrarex.

12. For example, in November 2012, after the Second Circuit affirmed the February 23, 2012 Order and remanded the injunction for clarification, President Kirchner stated that Argentina was going to pay the Exchange Bonds, but "not one dollar to the 'vulture funds.'"

13. On August 23, 2013, the Second Circuit affirmed the Amended February 23 Order. *NML Capital, Ltd v. The Republic of Argentina,* No. 12-105(L) (2d Cir. Aug. 23, 2012) (ECF No. 1001).

14. Shortly thereafter, President Kirchner announced that Argentina would offer a new bond exchange that would replace the Exchange Bonds with new bonds governed by Argentine law and payable in Argentina. This plan to evade the rulings of United States courts evidences Argentina's continuing intention not to fulfill its obligations pursuant to the Equal Treatment Provision.

15. Argentina filed another petition for a writ of certiorari, seeking review by the Supreme Court of the Second Circuit's affirmance of the Amended February 23 Order. That petition was also denied. *Exchange Bondholder Group v. NML Capital, Ltd., et al.,* No. 13-991 (S. Ct. June 16, 2014).

16. After this second petition for writ of certiorari was denied, Argentina's Economy Minister Axel Kicillof announced a plan—nearly identical to the plan announced in August 2013 by President Kirchner—to evade the Court's Amended February 23 Order by swapping the Exchange Bonds for new bonds payable in Argentina and outside the Court's reach.

17. On June 20, 2014, the Court promptly issued an order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's orders. A true and correct copy of the Court's June 20, 2014 Order is annexed hereto as Exhibit D.

18. Six days later, on June 26, 2014, Argentina attempted to initiate payment to certain holders of Exchange Bonds by transmitting funds to Bank of New York Mellon ("BNY"), as trustee, without making ratable payment to any of the judgment creditors, including Andrarex.

19. On August 6, 2014, the Court issued an Order finding that the June 26, 2014 payment by Argentina to BNY was illegal and in violation of the Court's previous Orders. A true and correct copy of the Court's August 6, 2014 Order is annexed hereto as Exhibit E.

20. Argentina's President Kirchner subsequently announced that Argentina would enact legislation to change the manner in which it makes payments on the Exchange Bonds, such that BNY would be removed as trustee for certain Exchange Bonds, and all Exchange Bonds would be paid from a single account in Argentina through a financial institution called *NaciOn Fideicomisos's* that Argentina controls. Argentina has taken steps to carry out this illegal plan. The "Legal Notice" published in The New York Times on September 22, 2014, is attached as Exhibit F hereto. These actions are yet another attempt by Argentina to evade the rulings of the Court in violation of the Amended February 23 Orders, and to flout its obligations under the Equal Treatment Provision.

21. As a result of these flagrant and unlawful activities, other bondholders moved by order to show cause to hold Argentina in civil contempt of court. On September 29, 2014, the Court issued an Order holding Argentina in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental Order regarding Argentina's civil contempt. A true and correct copy of

the Court's September 29, 2014 Order is annexed hereto as Exhibit G, and a true and correct copy of the Court's October 3, 2014 Order is annexed hereto as Exhibit H.

22. On September 30, 2014, Argentina purported to initiate an interest payment to certain holders of Exchange Bonds by transmitting funds to Nacion Fideicomisos, S.A., a subsidiary of Argentina's wholly-owned bank, Banco de la Nacion Argentina, without making a ratable payment to any bondholder, including Andarex.

23.. Andarex now seeks specific performance of the Equal Treatment Provision with respect to its beneficial holdings of bonds issued pursuant to the FAA as to which Andarex has been awarded either a money judgment, or summary judgment as to Argentina's liability to pay Andarex principal and interest.

## II.   PARTIEV

24. Plaintiff Andrarex Ltd. is a corporation organized under the laws of the British Virgin Islands.

25. Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603(a).

## III.   JURISDICTION AND VENUE

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f) and pursuant to certain contractual terms governing the Bonds.

27. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, as Argentina is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of the FAA by holders of bonds issued thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

28. In addition, Argentina consented in the FAA to submit to the jurisdiction of this Court in respect to actions arising out of the FAA or bonds issued thereunder. Pursuant to Section 22 of the FAA, Argentina appointed Banco de la Nacion Argentina, 299 Park Avenue, New York, New York, 10171, as its authorized agent for service of process. Paragraph 23 of the FAA provides that

the FAA shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

## IV.   FACTUAL ALLEGATIONS

29.   Andrarex owns beneficial interests in six bonds ("Andrarex's Bonds") issued pursuant to the FAA.

30.   Andrarex is the beneficial owner of $300,000 principal amount of bonds with International Securities Identification Number ("ISIN") US040114BE93, maturity date of April 7, 2009, and coupon rate of 11.75 percent ("2009 Bond").

31.   Andrarex is the beneficial owner of $900,000 principal amount of bonds with ISIN US040114FC91, maturity date of March 15, 2010, and coupon rate of 11.375 percent ("2010 Bond").

32.   Andrarex is the beneficial owner of $200,000 principal amount of bonds with ISIN US040114GD65, maturity date of February 21, 2012, and coupon rate of 12.375 percent ("2012 Bond").

33.   Andrarex is the beneficial owner of $700,000 principal amount of bonds with ISIN US040114GA27, maturity date of June 15, 2015, and coupon rate of 11.75 percent ("2027 Bond").

34.   Andrarex is the beneficial owner of $200,000 principal amount of bonds with ISIN US040114AV28, maturity date of September 19, 2027, and coupon rate of 9.75 percent ("2028 Bond").

35.   Andrarex is the beneficial owner of $330,000 principal amount of bonds with ISIN US040114GH79, maturity date of June 19, 2031, and coupon rate of 12 percent ("2031 Bond").

36.   On June 6, 2007, Andrarex brought an action against Argentina in this Court based on Argentina's failure to pay principal and interest on Andrarex's Bonds. *Andrarex, Ltd., v. Republic of Argentina*, 07 Civ. 05593.

37.   On October 1, 2008, the Court has entered a summary judgment in the action in the amount of $5,276,390 plus post-judgment interests.

38. Argentina has made no voluntary payment to Andrarex in connection with any of Andrarex's Bonds.

39. The FAA contains an Equal Treatment Provision that states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic . . . . **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).**

Exhibit A ¶ 1(c) (emphasis added).

40. According to its plain language, the Equal Treatment Provision prohibits Argentina from making or attempting to make a payment to a holder of External Indebtedness without making a ratable payment to Andrarex on Andrarex's Bonds.

41. In 2001, Argentina declared a moratorium (the "Moratorium") on the bonds governed by the FAA (as well as on other bonds).

42. Argentina has passed legislation each year renewing the Moratorium.

43. In 2005, Argentina attempted to restructure its defaulted debt by offering a bond exchange to all holders of non-performing bonds, including the bonds governed by the FAA (the "2005 Exchange").

44. The Prospectus for the 2005 Exchange stated:

> Existing defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely. . . . The Government has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer. . . . that are not tendered or otherwise restructured as part of such transaction. Consequently, if you elect not to tender your bonds in an exchange offer there can be no assurance that you will receive any future payments in respect to your bonds.

45. Holders of approximately 25% of Argentina's non-performing bonds did not participate in the 2005 Exchange.

46. Andrarex did not participate in the 2005 Exchange.

47. In 2005, Argentina began making semi-annual interest payments to holders of bonds issued in the 2005 Exchange (such bonds, the "2005 Exchange Bonds," and such holders, the "2005 Exchange Bondholders").

48. Argentina paid all subsequent interest due on the 2005 Exchange Bonds until the payment that came due on June 30, 2014. On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2005 Exchange Bonds by transmitting funds to the BNY as trustee. By reason of Orders issued by the Court, BNY did not further transmit these funds to holders of the 2005 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina,* No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

49. Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2005 Exchange Bonds as it becomes due.

50. To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 (the "Lock Law") on February 9, 2005. A true and correct copy of the Lock Law and a certified translation are annexed hereto as Exhibit I.

51. In its January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange . . . .**

(emphasis added)

52. Article 1 of the Lock Law provides that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

> Article 2 - The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

- 8 -

> Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.
>
> Article 4 - The national Executive Power must—within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

Exhibit I.

53. Argentina violated the Equal Treatment Provision of the FAA by lowering the rank of its payment obligations under Andrarex's Bonds below that of other unsecured and unsubordinated External Indebtedness by relegating Andrarex's Bonds to a non-paying class pursuant to the Lock Law.

54. In 2009, in preparation for a new bond exchange that took place in 2010 (the "2010 Exchange"), the Argentine Senate and Chamber of Deputies passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange. A true and correct copy of Law 26,547 and a certified translation are annexed hereto as Exhibit J.

55. Law 26,547 provides:

> Article 1. The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.
>
> Article 3. The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.
>
> Article 5. It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

Exhibit J.

56.     The prospectus for Argentina's 2010 Exchange stated:

> Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely. In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.* Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . . and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt...

> Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

57.     Andrarex and along with other bondholders (the "Non-tendering Bondholders") participated in neither the 2005 Exchange nor the 2010 Exchange.

58.     Argentine courts have held that the Lock Law and the Moratorium prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

59.     Argentina violated the Equal Treatment Provision of the FAA by relegating Andrarex's Bonds to a non-paying class pursuant to Law 26,517.

60.     In 2010, Argentina began making semi-annual interest payments to holders of bonds issued in the 2010 Exchange (such bonds, the "2010 Exchange Bonds," and such holders, the "2010 Exchange Bondholders.")

61.     Argentina paid all interest due on the 2010 Exchange Bonds until the payment due on June 30, 2014. On June 26, 2014, Argentina attempted to initiate payment to certain holders of 2010 Exchange Bonds by transmitting funds to BNY as trustee. By reason of orders issued by this Court, BNY did not further transmit those funds to holders of the 2010 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina,* No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

62.     Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2010 Exchange Bonds as it becomes due.

63. Upon information and belief, without an order of this Court, Argentina will continue to pay or attempting to pay the 2005 and 2010 Exchange Bondholders while paying nothing to Andrarex in violation of the Equal Treatment Provision.

64. Andrarex has been damaged as a result of Argentina's violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision.

65. In Orders issued in the three Pre-judgment Cases, the Court:

   a. held that Argentina's decisions violated the Equal Treatment Provision;

   b. granted partial summary judgment to the bondholder on claims for specific performance;

   c. held that the bondholder had no adequate remedy at law and that, absent equitable relief, would suffer irreparable harm;

   d. held that the equities strongly supported injunctive relief;

   e. held that Argentina had the financial wherewithal to meet its payment obligations to the bondholder in those cases;

   f. required Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to the bondholder whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds; and

   g. held that the Equal Treatment Provision applies to holdings of FAA bonds that have been reduced to money judgments.

True and correct copies of the Court's December 7, 2011, February 23, 2012 and November 21, 2012 Orders are annexed hereto as Exhibits K, B, and C, respectively.

66. In its December 7, 2011 Order, the Court specifically held that Argentina's Equal Treatment obligations applied to judgments

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

Exhibit K at 4 ¶ 3. Therefore, relief identical to that granted to the bondholder in the Pre judgment Cases is warranted in the instant post-judgment and summary judgment case brought by Andrarex.

67. As a result of the Orders of the Court, the doctrine of issue preclusion (also known as collateral estoppel) bars Argentina from denying that both Argentina's issuance of higher-ranking bonds in the 2005 and 2010 Bond Exchanges and Argentina's continuing payments and attempts to pay the holders of these bonds—while paying nothing to Andrarex—constitute violations of the Equal Treatment Provision of the FAA.

## V. CLAIM FOR RELIEF

(For Specific Enforcement of the Equal Treatment Provision)

68. Andrarex repeats and realleges the allegations set forth in paragraphs 1 through 64 above.

69. Pursuant to ¶ 1(c) of the FAA (i.e. the Equal Treatment Provision), Argentina provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

70. Argentina, therefore, may not make any payment or attempt to make any payment on its 2005 and 2010 Exchange Bonds without also making a ratable payment at the same time to Andrarex on Andrarex's beneficial interests in bonds issued pursuant to the FAA.

71. Argentina has engaged in a course of conduct that violates the Equal Treatment Provision.

72. Through the passage of Law 26,017 (i.e. the Lock Law), Argentina issued a new series of bonds with payment obligations that rank higher than those held by Andrarex in violation of the Equal Treatment Provision.

73. Through the passage of Law 26,547, Argentina issued a new series of bonds with payment obligations that rank higher than those held by Andrarex in violation of the Equal Treatment Provision.

74. The bonds issued in the 2005 Exchange and the 2010 Exchange are External Indebtedness.

75. Argentina's legislative actions forbidding payment on non-tendered bonds violate the Equal Treatment Provision.

76. Argentina's past payments of interest to 2005 Exchange Bondholders, while paying nothing to Andrarex, violated the Equal Treatment Provision.

77. Argentina's continuing payments and attempts to pay interest to 2005 Exchange Bondholders without ratable payment to Andrarex will be further and continuing violations of the Equal Treatment Provision.

78. Argentina's past payments of the scheduled interest to 2010 Exchange Bondholders, while paying nothing to Andrarex, violated the Equal Treatment Provision.

79. Argentina's continuing payments of interest and attempts to pay interest to 2010 Exchange Bondholders without ratable payment to Andrarex will be further and continuing violations of the Equal Treatment Provision.

80. Andrarex has suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces the Equal Treatment Provision with a mandatory injunction requiring Argentina to pay Andrarex ratably whenever it pays interest or attempts to pay interest to 2005 or 2010 Exchange Bondholders.

81. Remedies available at law are inadequate to compensate Andrarex for such injury.

82. Andrarex has performed its part of the contract with Argentina.

83. Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

84. The balance of the equities tips toward the issuance of an injunction.

85. The public interest would not be disserved by a permanent injunction

WHEREFORE, Plaintiff demands judgment as follows:

A. An Order specifically enforcing the Equal Treatment Provision, by requiring ratable payment to Andrarex whenever Argentina makes or attempts to make payments on the 2005 and 2010 Exchange Bonds.

B. Awarding Plaintiff Andrarex its costs, attorneys' fees and such other and further relief as the Court shall deem just and proper.

DATED:   November 14, 2014
         New York, New York

By /s/ Andrea Boggio
Andrea Boggio (AB-0564)
Attorney at Law
1150 Douglas Pike
Smithfield, RI 02917
Telephone: (646) 342-1577
boggio@stanfordalumni.org

Attorney for Andrarex, Ltd.